**S.D. COLLECTIBLES, INC., Appellant,**

v.

**PLOUGH, INC., Appellee.**

**No. 91–1836.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1991.

Decided Dec. 24, 1991.

---

**3.** Petitioner does take four non-prescription pain relievers a day.

Thomas M. Utterback, St. Louis, Mo., argued, for appellant.

Douglas W. King, St. Louis, Mo., argued, for appellee, Charles A. Weiss, on the brief.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

McMILLIAN, Circuit Judge.

S.D. Collectibles, Inc. (Collectibles), appeals from a final order entered in the District Court[1] for the Eastern District of Missouri granting summary judgment in favor of Plough, Inc. (Plough), because Collectibles was not a consumer or competitor and thus had no standing to sue for antitrust violations, 15 U.S.C. § 1 *et seq.*[2] For reversal, Collectibles argues that (1) it is a competitor of Plough's and thus has antitrust standing; (2) the district court should have found zinc oxide to be the relevant product market; and (3) damages are not speculative and could be awarded. For the reasons discussed below, we affirm the order of the district court.

FACTS

In 1985, Ambassador Enterprises, Inc. (Ambassador), developed a zinc oxide sun screen product in vibrant colors, called Zinka. On June 18, 1986, Collectibles entered into an agreement with Ambassador whereby Collectibles would solicit orders for Zinka and receive a commission on those sales. The agreement stated it would last for one year, but could be cancelled by either party on 60 days written notice. Collectibles had a specific five-state territory in which it solicited sales of Zinka and Ambassador had other representatives in other territories. Collectibles was therefore a manufacturer's representative for Ambassador.

Ambassador later entered into an agreement with Plough, effective October 7, 1986, whereby Ambassador licensed to Plough the right to manufacture, distribute, and sell Zinka throughout the United States. Ambassador gave notice of termination to Collectibles and its other manufacturer's representatives.

Collectibles filed this lawsuit against Plough alleging tortious interference and

---

1. The Honorable Roy W. Harper, Senior United States District Judge for the Eastern District of Missouri.

2. *S.D. Collectibles v. Plough, Inc.,* No. 89–1362C(A) (E.D.Mo. Oct. 10, 1990) (grant of Plough's motion for summary judgment); *id.* (Feb. 19, 1991) (denial of S.D. Collectibles motion for reconsideration).

antitrust injury. The district court dismissed the tortious interference count and Collectibles did not appeal this order. On October 10, 1990, the district court granted Plough's motion for summary judgment. *S.D. Collectibles, Inc. v. Plough, Inc.*, No. 89–1362C(A) (E.D.Mo. Oct. 10, 1990). The district court also found that the relevant product market was sun care products and even with Zinka, Plough only maintained a thirty-five percent to thirty-seven percent dollar share of that market and thus could not be attempting to monopolize the market. Collectibles filed a motion for reconsideration and the district court affirmed its October 10th order but for different reasons. *Id.* (Feb. 19, 1991). The district court found that the deposition of Anthony Guiliano, vice-president of marketing for Plough when Plough signed its agreement to distribute Zinka, raised an issue of fact as to whether the relevant product market was sun care products or zinc oxide products. The district court, however, affirmed its grant of summary judgment based on the fact that Collectibles is not a "consumer or competitor" and thus does not have standing to sue for antitrust injury. Collectibles appeals from this order.

ANALYSIS

We agree with the district court that Collectibles is neither a consumer nor a competitor of Plough and thus lacks the proper standing to sue for an antitrust violation. Because we find Collectibles lacks standing, we do not reach the merits of Collectibles' other claims.

Standing in antitrust actions is limited by section 4 of the Clayton Act. 15 U.S.C. § 15 (1991). Collectibles must prove that it suffered antitrust injury, that is, "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977). A mere causal connection between the alleged antitrust injury and the plaintiff's alleged harm provides an insufficient basis for recovery. *See McDonald v. Johnson & Johnson*, 722 F.2d 1370, 1374 (8th Cir.1983) (*McDonald*), *cert. denied*, 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984). A standing determination "requires an evaluation of the plaintiffs' harm, the alleged wrongdoing by the defendants, and the relationship between them." *Id.* 722 F.2d at 1373 (citing *Associated Gen. Contractors v. California State Council of Carpenters*, 459 U.S. 519, 535, 103 S.Ct. 897, 907, 74 L.Ed.2d 723 (1983) (*Associated General*)).

The antitrust laws were designed to protect competition and therefore standing is generally limited to actual market participants, that is, competitors or consumers. *Associated General*, 459 U.S. at 539, 103 S.Ct. at 909; *South Dakota v. Kansas City Southern Indus., Inc.*, 880 F.2d 40, 47 (8th Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990); *McDonald*, 722 F.2d at 1379. Collectibles is neither. Collectibles claims that it is a competitor of Plough because when Plough entered into its agreement with Ambassador, Plough was not yet the manufacturer of Zinka. Therefore, Collectibles argues it was a competitor of Plough prior to Plough's exclusive license agreement and this exclusive license agreement forced it out of the market.

We disagree. Collectibles was never in competition with Plough. Our decision in *General Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795 (8th Cir. 1987) (*Hartz*), is directly on point. *Hartz* involved two plaintiffs involved in the distribution of Hartz pet products. One, General Industries, was a distributor who bought and sold Hartz products. *Id.* at 798. The other, RDN, operated as a broker of Hartz products. *Id.* RDN, like Collectibles, solicited sales of Hartz products and received a commission for each sale. *Id.* at 809. Both General Industries and RDN were terminated by Hartz. *Id.* at 799. This court held that General Industries had standing to sue, but RDN did not. We concluded "RDN was not a consumer of goods or services subject to restraint or an injured competitor of Hartz, the party engaging in the claimed restraint." *Id.* at 809.

The only difference between *Hartz* and the instant case is the party accused of

restraining trade. Here, Collectibles claims that Plough, a distributor and manufacturer of Zinka with whom Collectibles has no contractual relationship, is restraining trade. This distinction makes no difference. The key in *Hartz* is that a broker, by contrast to a distributor, is not a consumer of the product marketed. Therefore, if Collectibles was never a consumer of Zinka, it can not be a competitor of Plough. Additionally, an examination of Collectibles' duties as a broker for Ambassador shows it was not a consumer. Collectibles never bought and resold Zinka. Collectibles simply solicited orders which were shipped and invoiced by Ambassador and then Collectibles was paid a percentage as commission.

■ Because Collectibles was not a consumer of Zinka it could not have been in competition with Plough, a distributor and manufacturer of Zinka. Additionally, Ambassador legally terminated its contract with Collectibles at the time it entered into the exclusive licencing agreement with Plough and thus Collectibles and Plough were not competitors. Therefore, Collectibles is not a competitor or consumer and thus lacks standing to sue for any antitrust violation.

Accordingly, the judgment of the district court is affirmed.